IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Richard P. Mettke

    Plaintiff

v.

Hewlett Packard Company

    Defendant.

Case No.: 2:11-CV-00410

Judge Graham

Magistrate Judge King

## **OPINION AND ORDER**

This matter is before the court pursuant to a motion to dismiss (Doc. #5) filed by Defendant Hewlett Packard Company ("HP" or "Hewlett Packard"). Pro se Plaintiff Richard P. Mettke ("Mettke") filed a memorandum in opposition (Doc. #8), to which HP replied (Doc. #9). Mettke then filed a "Motion Contra to Defendant's Motion" (Doc. #10). This pleading is, in effect, a sur-reply filed without leave of court, and as such is not generally permitted under the court's local rules. See S.D. Ohio Civ. R. 7.2, ("[n]o additional memoranda beyond those enumerated will be permitted except upon leave of court for good cause shown"). However, given Mettke's pro se status, the court has considered the filing. See e.g., Usher v. U.S., No. 10-cv-47, 2010 WL 3721385, 2 (E.D. Ky. September 15, 2010) (noting that the court's local rules prevent the non-moving party from filing a sur-reply absent leave of court, but considering plaintiff's sur reply given his pro se status); Porcaro v. Parizek, No. 06-13834, 2007 WL 4547379, 2 (E.D. Mich. July 5, 2007) (sua sponte granting pro se plaintiff leave to file sur reply).

For the reasons that follow, the Court grants in part and denies in part HP's motion to dismiss.

I.  **Standard Involved**

In ruling on a motion to dismiss under Rule 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff, accept all well-pleaded allegations in the complaint as true, and determine whether plaintiff undoubtedly can prove no set of facts in support of those allegations that would entitle him to relief. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Bishop v. Lucent Technologies, Inc., 520 F.3d 516, 519 (6th Cir.2008); Harbin-Bey v. Rutter, 420 F.3d 571, 575 (6th Cir.2005). To survive a motion to dismiss, the "complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." Mezibov v. Allen, 411 F.3d 712, 716 (6th Cir.2005). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. Id.

While the complaint need not contain detailed factual allegations, the "[f]actual allegations must be enough to raise the claimed right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), and must create a reasonable expectation that discovery will reveal evidence to support the claim. Campbell v. PMI Food Equipment Group, Inc., 509 F.3d 776, 780 (6th Cir.2007). A complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, --- U.S. ----, 129 S.Ct. 1937, 1949 (2009). Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops

short of the line between possibility and plausibility of entitlement to relief. Id. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Where the facts pleaded do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown that the pleader is entitled to relief as required under Fed.R.Civ.P. 8(a)(2). Id.

The pleadings of pro se plaintiffs, like Mettke, "are held to less stringent standards than those prepared by attorneys, and are liberally construed when determining whether they fail to state a claim upon which relief can be granted." Martin v. Overton, 391 F.3d 710, 712 (6th Cir. 2004) (citing Haines v. Kerner, 404 U.S. 519, 520-521 (1972); Jourdan v. Jabe, 951 F.2d 108, 110 (6th Cir. 1991)).

In evaluating a motion to dismiss, a court may consider the complaint, any documents attached or incorporated in the complaint, and public documents of which it would be proper to take judicial notice. Doe v. SexSearch.Com, 551 F.3d 412, 416 (6th Cir. 2008) ("While our analysis primarily focuses on the complaint, 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint … may be taken into account.'"); Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999), overruled in part on other grounds; see also United States of America ex rel. Dingle v. Bioport Corp., 270 F.Supp.2d 968, 972 (W.D. Mich. 2003) (public records and government documents, including those available from reliable sources on the Internet, are subject to judicial notice).

It is with these standards in mind that the motion to dismiss will be decided.

3

## II. Background

This action for breach of contract and fraud stems from settlement of a patent infringement lawsuit.

### A. The Underlying Patent Infringement Action

In 1997, Mettke filed a patent infringement action against HP in the United States District Court for the Northern District of Alabama, Case No. 1:97-cv-03160-TMP ("the Alabama action"). (Compl. at III, ¶2). Mettke had previously been issued United States Patent No. 5,602,905 (the "'905 patent"), which consisted of five claims, four of which were for a "public on-line, pay-as-you-use communications terminal," and one for a method of using such a terminal. (Compl. at III, ¶1). In the Alabama action, Mettke claimed that HP was guilty of infringing upon the '905 patent. (Compl. at III, ¶2).

On or about April 27, 1998, Mettke and HP entered into a settlement agreement resolving the Alabama action. (Compl. at IV, ¶2). Pursuant to that agreement, Mettke "release[d] Hewlett Packard from [his] claims of past infringement of the '905 patent'" in exchange for the receipt of a $10,000 payment from HP. (Compl. at Exhibit 1). The agreement provides that Mettke's acceptance of HP's offer to settle was based upon the following:

- "representations by Hewlett Packard that it has no present plans to make, use or sell Internet kiosks [and]"
- "Hewlett Packard's representations that very few (i.e., two or three), if any, Internet kiosk units have actually been make, used and/or sold by Hewlett Packard."

(Compl. at Exhibit 1). The settlement agreement also states that Mettke's release of claims of past infringement "does not apply to any potential future business activity of Hewlett Packard." (Compl. at Exhibit 1). The Alabama action was dismissed upon entry of a stipulated order of

4

dismissal with prejudice. See Case No. 1:97-cv-03160-TMP, June 9, 1998 Stipulated Order of Dismissal with Prejudice, Document No. 33, available at www.alnd.uscourts.gov, (click on CM/ECF link) (last visited Feb. 10, 2012); see also 21B Fed. Prac. & Proc. Evid. §5106.4 (2d ed.) (2011) (federal courts properly take judicial notice of the records of other courts, such records "are a source of reasonably indisputable accuracy when they record some judicial action such as dismissing an action") (internal quotations omitted.)

## B. Mettke's Application for the Reissue of the '905 Patent

Shortly after entering into the settlement agreement, Mettke submitted to the United States Patent and Trademark Office ("USPTO") an application for reissue of the '905 patent pursuant to 35 U.S.C. §251.[1] (Doc. #5 at Exhibit A.)[2] In his reissue declaration, Mettke stated that he

---

[1]Section 251 addresses reissue of defective patents and provides:

> Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Director shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent. No new matter shall be introduced into the application for reissue.
>
> The Director may issue several reissued patents for distinct and separate parts of the thing patented, upon demand of the applicant, and upon payment of the required fee for a reissue for each of such reissued patents.
>
> The provisions of this title relating to applications for patent shall be applicable to applications for reissue of a patent, except that application for reissue may be made and sworn to by the assignee of the entire interest if the application does not seek to enlarge the scope of the claims of the original patent.
>
> No reissued patent shall be granted enlarging the scope of the claims of the original patent unless applied for within two years from the grant of the original patent.

believed the original patent to be "wholly or partly in operative or invalid by reason of me claiming less than I had the right to claim." (Id.) Mettke stated that he had inadvertently omitted claims that recited "accessing the Internet" generally, rather than merely accessing "commercial online services." (Id.) His reissue application included the original claims 1-5, unchanged, and added claims 6-9. (Id.)

On August 24, 1999, the USPTO examiner rejected claims 1-9. (Doc. #5 at Exhibit B, August 24, 1999 Office Action Summary). Mettke thereafter amended his reissue application by deleting original claim 5, (Doc. #5 at Exhibit C, November 22, 1999 Amendment), and later, by deleting original claims 1-4, (Doc. #5 at Exhibit D, December 11, 2001 Amendment). Mettke decided to proceed solely on the prosecution of new claims 6-9. On March 12, 2002, however, the examiner issued a final rejection of claims 6-9. (Doc. #5 at Exhibit E, March 12, 2002 Office Action Summary).

On August 31, 2006, the United States Board of Patent Appeals and Interferences ("BPAI") affirmed the examiner's rejection of claims 6-9 and also entered a new ground for rejection. (Doc. #5 at Exhibit F, Excerpts of August 31, 2006 Decision on Appeal). Mettke filed

---

35 U.S.C. § 251

[2] HP has attached copies of documents and excerpts of documents related to Mettke's reissue application to its motion to dismiss. A complete copy of each document may also be accessed by visiting the United States Patent and Trademark Office website, Patent Application Information Retrieval, http://portal.uspto.gov/external/portal/pair (enter 09/134,831 for the application number and click on the "Image File Wrapper" tab) (last visited February 2, 2012).

The documents related to Mettke's reissue application are government maintained public documents of which the Court may take judicial notice. See e.g., Music Makers Holdings, LLC v. Sarro, No. RWT 09cv1836, 2010 WL 2807805, 2 fn. 1 (D. Md. July 15, 2010) ("The Court may take judicial notice of matters of public record from sources – such as the [Patent and Trademark Office] – whose accuracy cannot be reasonably questioned.") (citing Fed.R.Civ.P. 201(b); Hall v. Virginia, 385 F.3d 421, 424 n. 3 (4th Cir. 2004); Colonial Penn Ins. V. Coil, 887 F.2d 1236, 1239-40 (4th Cir. 1989)).

a Request for Continued Examination, amending claim 6 and cancelling claims 7-9. The examiner maintained the rejection of claim 6, and the BPAI again affirmed. (Doc. #5 at Exhibit H, Excerpts of September 30, 2008 Decision on Appeal). Mettke appealed the BPAI's decision to the Court of Appeals for the Federal Circuit. On June 25, 2009, the Federal Circuit issued a decision affirming the BPAI's denial of the patentability of Mettke's reissue application claim 6. See In re Richard P. Mettke, 570 F.3d 1356, 1361 (Fed. Cir. 2009). As will be discussed below, HP contends that because all of Mettke's patent claims were rejected, cancelled, or both during the prosecution of his reissue application, Mettke no longer holds a valid patent. Mettke counters that he held the '905 patent "until March 9, 2009 when it expired due to his failure to pay a required maintenance fee." (Doc. #8, p.4).

### C. The Instant Action

Approximately thirteen years after settling the Alabama action, Mettke filed the instant action against HP in Ohio state court. The case was thereafter removed to this court on the basis of diversity jurisdiction. (Doc. #1).

Count IV of Mettke's complaint alleges a claim for breach of contract and a claim for fraud. (Compl. at IV, ¶¶ 1-7). Mettke alleges HP breached the settlement agreement and committed fraud because it planned to deploy Internet Kiosks as of the date of the settlement even though HP represented in the settlement agreement that it "had no present plans to make, use or sell Internet Kiosks." (Compl. at IV, ¶¶ 1-5 and Exhibit 1). According to the complaint, HP deployed Internet Kiosks to Circuit City, Best Buy and CompUSA in August of 1998, (Complaint at IV, ¶2 and Exhibit 2) and "partnered with American Airline's to put Internet Kiosks in

Admiral Clubs" in the summer of 1998, (Complaint at IV, ¶3 and Exhibit 3). Mettke contends that HP must "have planned for th[ese] deployment[s] prior to April 27, 1998 (date of Mettke's settlement)," (Complaint at IV, ¶¶2-3), and states that had he "known that Hewlett-Packard had plans to make, use or sell Internet Kiosks, he would have never settled the lawsuit," (Complaint at IV, ¶6).

Mettke seeks relief including "reasonable compensatory damages of $200,000, since April 1998, as a reasonable royalty and seat license fees that Mettke would have been due from Hewlett-Packard and known business partners ... for Internet Kiosk related manufacturing, use and deployment," punitive damages of $75,000 "for fraud and misconduct," and "reasonable attorneys fees, costs, and expenses[.]" (Complaint at prayer for relief).

HP has moved for dismissal of both of Mettke's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). HP advances four arguments in support of its motion. First, HP argues that Mettke's complaint, properly viewed, seeks to set aside the settlement agreement so that Mettke can pursue the underlying action against HP for infringement of the '905 patent. HP contends, however, that Mettke's pursuit of the underlying patent action must fail because, as a result of the reissue proceedings, Mettke no longer holds the '905 patent – the patent upon which that action was based. Second, HP argues that Mettke's claims are barred because Mettke has failed to return the consideration paid by HP for the settlement. Third, HP argues that any claim for fraud asserted by Mettke is barred by the applicable statute of limitations. Finally, HP contends that the complaint fails to sufficiently plead a fraud claim.

## III. HP's Motion to Dismiss

### A. HP's argument for dismissal based on the alleged invalidity of the '905 patent.

HP argues that despite being labeled "breach of contract" and "fraud" claims, Mettke's claim against HP is in fact an infringement claim based on the '905 patent. (Doc. #9, p.9). HP further contends that because all of Mettke's patent claims were rejected, cancelled, or both, during the prosecution of his reissue application, Mettke no longer holds the '905 patent – the patent forming the basis of his claim – and therefore, "his complaint must be dismissed in its entirety." (Doc. #5, p.2). The court disagrees with the first step in HP's analysis – i.e., its categorization of the claims in Mettke's complaint – and as such, it need not address the question of whether the reissue process rendered the '905 patent invalid.

In determining the cause of action that a plaintiff has alleged, courts must look beyond the labels the plaintiff has attached to a claim and examine the substance of the allegations. Minger v. Wilson, 239 F.3d 793, 799 (6th Cir. 2001). In support of its categorization of Mettke's claims, however, HP does not direct the court to the allegations in Mettke's complaint. Instead, HP first directs the court to Mettke's request in the prayer for relief for reasonable royalty and seat license fees, which HP categorizes as "damages for patent infringement." (Doc. #9, p.2). HP also directs the court to an argument in the alternative made by Mettke in defense of the timeliness of his fraud claim. (Doc. #9, p. 9).[3] HP contends, without citation to supporting authority, that the

---

[3] In response to HP's argument that any fraud claim asserted in Mettke's complaint is barred by a four-year statute of limitations, Mettke argues first, that a fifteen-year statute of limitations rather than a four-year statute of limitations applies to both of his claims. (Doc. #8, p.14-15). Mettke then argues in the alternative that should the four-year statute of limitations be found to apply, that four-year period did not begin to run until Mettke became aware that the federal regulation regarding patent surrender, 37 C.F.R. §1.178(a), had been amended to retroactively eliminate the requirement for physical surrender of the original patent before the reissue proceedings would begin. (Doc. #8, p.15) ("Arguendo, the plaintiff first

prayer and Mettke's argument in defense of the timeliness of his fraud claim compel the conclusion that the complaint actually seeks to pursue a claim against HP for patent infringement.

The court is not bound by the prayer for relief in determining the character of a cause of action. See Schoonover v. Schoonover, 172 F.2d 526, 529-530 (10th Cir. 1949); cf. Johnson v. Jackson, 82 F.Supp. 915, 918 (E.D. Pa. 1949) (where a pleading states a cause of action for relief, designation of cause and prayer for relief, though some indication of nature of cause, are not controlling and appropriate relief under the facts pleaded will be granted).

In Schoonover, the Tenth Circuit Court of Appeals considered whether the plaintiff-appellant had alleged a cause of action for fraudulent inducement or for reformation of contract. Schoonover, 172 F.2d at 529-530. The court explained that the proper focus when confronted with such a question is the substance of the allegations of the complaint rather than the relief requested in the prayer. Id. at 530. Indeed, the prayer for relief "may be disregarded because it is recognized, without exception, that the prayer forms no part of the cause of action, and that a pleader will be entitled to the relief made out by the case and stated in the pleadings, irrespective of what is asked for in the prayer." Id. at 530. Based on the substance of the allegations in plaintiff-appellant's complaint, the court concluded that her cause of action was appropriately classified as one for fraud rather than reformation of contract. Id. ("While the complaint is not

---

became aware of the change to 37 CFR 1.178(a)...on November 19, 2009, which is within the window of a 4-year statute of limitations defense. He did not have a case against HP until the CFR change was applied retroactively to all pending reissue actions.") (emphasis in original).

In support of its categorization of Mettke's claims, HP contends, "If Plaintiff's claims were purely for breach of contract and fraud related to the settlement agreement, Plaintiff would have had those claims regardless of the amendment to the regulation. Plaintiff's own argument suggests that he is seeking to pursue a claim against HP for patent infringement...." (Doc. #9, p. 9).

clearly or artistically drawn, we think, fairly interpreted, the gist of the cause of action stated therein is that the fraud complained of induced appellant to agree to the execution of the contract to her damage"). In reaching this conclusion, the court disregarded the fact that the prayer for relief specifically requested reformation. Id.

The fact that Mettke's prayer for a reasonable royalty is consistent with an action for patent infringement, see 35 U.S.C. §284 ("Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer...."), does not compel the construction of Mettke's complaint that HP urges. Similarly, the court is not persuaded that HP's construction of the complaint is necessitated by virtue of an alternative argument made by the pro se plaintiff in his memorandum in opposition. And although HP has not directed the court to allegations in Mettke's complaint, the court notes that a review of those allegations does not support HP's argument that the causes of action stated therein are based on the '905 patent. The complaint does not, for example, detail the manner in which HP allegedly infringed on the '905 patent nor does it invoke specific sections of the patent law that were allegedly violated by HP. See e.g., Home & Nature Inc. v. Sherman Specialty Co., 322 F.Supp.2d 260, 265 (E.D.N.Y. 2004) (To state a claim for patent infringement, a complaint must (1) allege ownership of the asserted patent, (2) names each individual defendant, (3) cite the patent that is allegedly infringed, (4) describe the manner in which the defendant allegedly infringed, and (5) identify the specific sections of the patent law invoked); 60 AMJUR 2d. PATENTS §875 (updated November 2011). The thrust of the allegations in the complaint is that HP and Mettke entered into a settlement

agreement wherein HP expressly represented that it had no present plans to make, use or sell Internet Kiosks, that HP breached that term of the parties' agreement, and that Mettke was damaged thereby, and second, that HP's misrepresentation regarding its present plans to make, use or sell Kiosks induced Mettke to enter into the settlement to his damage.

At this stage, where the court is required to view the complaint in the light most favorable to Mettke, and mindful of the less stringent standard to which pro se plaintiffs are held, the court declines to construe Mettke's complaint as seeking to pursue the underlying patent infringement claim. HP's first argument in support of dismissal is not well-taken.

### B. HP's argument for dismissal based on failure to return or offer to return consideration

HP next argues that regardless of whether Mettke is seeking rescission of the settlement agreement so that he can pursue the underlying patent infringement claim, or claiming fraudulent inducement, "under Ohio law, a condition precedent to bringing these claims is a return of the underlying consideration. Because Plaintiff has not returned the $10,000.00 to HP, his claims fail as a matter of law." (Doc. #5, p. 10). Mettke responds that he has elected to pursue an action for fraudulent inducement rather than an action for rescission, that he is lawfully entitled to make such an election, and that return of the settlement consideration is not a condition precedent to an action for fraudulent inducement. (Doc. #8, pp. 12-13 and Doc. #10, pp. 7-9).

Given the court's decision not to construe the action as one for rescission, the only remaining question is whether return of the underlying consideration is a condition to bringing an action for fraudulent inducement. Neither party side has addressed whether Ohio law or the law of another jurisdiction should be applied to answer this question. Instead, both parties acquiesce, without comment, to application of Ohio law.

A federal court exercising diversity jurisdiction must apply the choice-of-law rules of the forum state. See Klaxon Co. v. Stentor Electric Mfg., 313 U.S. 487, 496 (1941); Cole v. Mileti, 133 F.3d 433, 437 (6th Cir.1998). This court is accordingly charged with applying Ohio choice-of-law rules. Ohio has adopted the choice-of-law rules set forth in Restatement (Second) of Conflict of Laws. See GBJ Corp. v. Eastern Ohio Paving Co., 139 F.3d 1080, 1085 (6th Cir. 1998) (citing Lewis v. Steinreich, 652 N.E.2d 981, 984-85 (Ohio 1995)). While the specific factors of each applicable Restatement section differ, the Restatement generally directs courts to apply the substantive law of the state with the most significant contacts to the claim. GBJ Corp., 139 F.3d at 1085 (citing Lewis, 652 N.E.2d at 984-85).

As a general matter, when the parties acquiesce to the application of a particular state's law, the courts need not address choice-of-law questions. See e.g., GBJ Corp. v. Eastern Ohio Paving Co., 139 F.3d 1080, 1085 (6th Cir. 1998) (citing In re Korean Air Lines Disaster, 932 F.2d 1475, 1495 (D.C. Cir. 1991) ("Unlike jurisdictional issues, courts need not address choice of law questions sua sponte."), cert. denied, 502 U.S. 994 (1991); Asp v. Toshiba America Consumer Products, LLC, 616 F.Supp.2d 721, 726 (S.D. Ohio 2008)). The Sixth Circuit has suggested however that departure from this general rule is appropriate where application of that state's law would result in injustice. GBJ Corp., 139 F.3d at 1085; see also Asp, 616 F.Supp.2d at 726 (the general rule is "especially" applicable "when no injustice will result from applying the wrong state's law").

The court in the GBJ Corp. case declined to "delve too deeply into the 'significant contact' analysis" given that the parties had acquiesced, without comment, to application of New York law to the claims at issue. GBJ Corp., 139 F.3d at 1085. Despite this conclusion, the court

was careful to note that the state of New York did have several "contacts" with the dispute. Id. The court listed those contacts and stated: "[t]he presence of these contacts does not necessarily require application of New York law; rather, we hold that these contacts are sufficient to convince us that no injustice is wrought by applying New York law to these acquiescent litigants." Id.

Like the parties in GBJ Corp., the parties to this case have acquiesced to application of a particular jurisdiction's law (i.e., Ohio law). Unlike the court in GBJ Corp., however, this court lacks sufficient information to be convinced that no injustice would be wrought by applying that state's law to the acquiescent litigants. Based on the limited information currently before the court, it is unclear what contacts, if any, Ohio has to the dispute, and it at least appears that other states may have a relationship to the dispute.

Moreover, to the extent that Ohio law is the "wrong law," the likelihood of injustice resulting from application of that law is greater given that Ohio appears to have adopted the minority approach when it comes to the "tender back" question. The Ohio Supreme Court has "long held that an action for fraud in the inducement of a settlement of a tort claim is prohibited unless the plaintiff tenders back the consideration received and rescinds the release." Berry v. Javitch, Block & Rathbone, L.L.P., 127 Ohio St.3d 480, 483 (2010) (plaintiffs could not elect to affirm the underlying settlement agreement and consent judgment and independently sue for fraudulent inducement to settle; rather, plaintiffs only option was to rescind the agreement, tender back the settlement money, and seek relief from the consent judgment entry); see also, Picklesimer v. Baltimore & O.R. Co., 151 Ohio St. 1, 2 (1949); Shallenberger v. Motorists Mut. Ins. Co., 167 Ohio St. 494, 501-03. In contrast, the majority of jurisdictions allow parties who have been induced through fraud to make a settlement agreement a choice of remedies: they may

14

rescind the agreement or they may affirm the agreement and sue for fraud damages. See e.g., Phipps v. Winneshiek County, 593 N.W.2d 143, 146 (Iowa 1999). Those electing to affirm the agreement and sue for damages are not required to tender back the consideration they received. See e.g., Solomon v. FloWarr Management, Inc., 777 S.W.2d 701, 705 (Tenn. Ct. App. 1989) (applying Alabama law).

Ultimately, the court need not resolve the question of which jurisdiction's tender back rule applies. Even assuming the law of the "correct" jurisdiction allows Mettke to affirm the settlement agreement and sue for fraud without tendering back the settlement consideration, Mettke's fraud claim would still be subject to HP's statute of limitations defense. As is discussed below, Mettke's claim is unable to withstand that defense.

### C. HP's argument for dismissal of the fraud claim as time-barred.

A statute of limitations defense may be raised by a motion to dismiss when it is apparent on the face of the complaint that the statute of limitations has run. Berry v. Chrysler Corp., 150 F.2d 1002 (6th Cir. 1945); Partis v. Miller Equipment Co., 324 F. Supp. 898, 902 (N.D. Ohio 1970), affirmed per curiam, 439 F.2d 262 (6th Cir. 1971).

As is stated above, Ohio has adopted the choice-of-law principles set forth in the Restatement (Second) of Conflict of Laws. Section 142 of the Restatement addresses which state's statute of limitations to apply in the case of a conflict. "There is a dispute among Ohio and federal courts whether to apply the 1971 version or the 1988 revision of § 142." Sonic Automotive, Inc. v. Chrysler Insurance Co., No.1:10-cv-717, 2011 WL 4063020, *4, *6 (Sept. 13, 2011) (observing that the majority of courts have applied the 1971 version of section 142 and adopting the majority position). However, both versions of section 142 provide that, as a general

matter, an action will not be maintained if it barred by the forum state's statute of limitations. Cf. Restatement (Second) Conflict of Law s 142 (1971) ("An action will not be maintained if it is barred by the statute of limitations of the forum") with Restatement (Second) Conflict of Law s 142 (1988) (as a general rule, the "forum will apply its own statute of limitation barring the claim;" the result will be otherwise only in "exceptional circumstances"). Ohio's choice-of-law principles generally call for application of the forum state's statute of limitations "even if the case requires application of another state's substantive law." Toledo Museum of Art v. Ullin, 477 F.Supp. 2d 802, 806 (N.D. Ohio 2006).

In Ohio, the statute of limitations for fraud claims is four years. Ohio Rev. Code §2305.09. Ohio applies the so-called discovery rule to fraud claims. Under the discovery rule, the statute of limitations does not begin running until the fraud is, or should have been, discovered. Investors REIT One v. Jacobs, 46 Ohio St.3d 176, paragraph 2b of syllabus (1989). "When determining whether the exercise of reasonable diligence should have discovered a case of fraud, the relevant inquiry is whether the facts known would lead a fair and prudent man, using ordinary care and thoughtfulness, to make further inquiry." Cundall v. U.S. Bank, 122 Ohio St.3d 188, 194 (Ohio 2009).

HP argues that the complaint and one of the exhibits attached thereto demonstrate that Mettke discovered the facts relating to his fraud claim at the latest in May 2005 – i.e., more than four years before he filed the complaint. Referenced in, and attached to, the complaint are two articles which Mettke alleges evidence HP's intention to make, use and/or sell kiosks at the time of entering into the settlement agreement in April 1998. (Compl. at Exhibits 2 and 3; Compl. at IV, ¶¶ 2-3). HP directs the court to the article Mettke has attached as Exhibit 3. That article,

16

dated August 19, 1998, announces a decision by HP and American Airlines to place HP kiosks in American Airline's Admirals Clubs starting in August or September of 1998. (Compl. at Exhibit 3. Mettke alleges that HP "had to have planned for this deployment prior to April 27, 1998" (date of Mettke's settlement)." (Compl. at IV, ¶3.) HP points out that the article itself indicates that it was printed from the "www.findarticles.com" website on May 6, 2005. (Compl. at Exhibit 3). HP therefore concludes that "Plaintiff knew of the facts about which he now complains more than four years prior to filing his fraud claim."

Mettke does not dispute that he was aware of the article attached as Exhibit 3 in May 2005. Instead, Mettke argues that his fraud claim is subject to a fifteen-year statute of limitations (see Ohio Rev. Code §2305.06 (governing actions on written agreements)), rather than a four-year statute of limitations. (Doc. #8, p.14-15); (Doc. #9, p. 9) (same). The court disagrees. Section 2305.09 of the Ohio Revised Code expressly mandates that all actions, such as Mettke's, which seek "relief on the ground of fraud" be filed within four years. Ohio Rev. Code §2305.09. This result does not change by virtue of the fact that the plaintiff alleges that the fraud in question induced him to enter into a written agreement. See e.g., Rare Coin Enterprises Ltd. v. Chrans, No. 3:05 CV 7473, 2006 WL 2373281, (N.D. Ohio August 16, 2006) (applying O.R.C. 2305.09 to a fraudulent inducement to agree claim); see e.g., Health Adm'rs of America, Inc. v. American Med. Sec., Inc., No. 00CAE04009, 2001 WL 311007, *10 (Ohio App. 5 Dist. March 29, 2001) (same).

In the alternative, Mettke argues that the four-year statute of limitations clock did not begin to run when he discovered HP's fraudulent conduct in May 2005, but when he discovered that he had the right to sue on the basis of such conduct. (Doc. #8, p.15). Mettke contends that he

did not have an actionable fraud claim until 37 C.F.R. §1.178(a) was amended in 2004 to retroactively eliminate the requirement that a patent holder physically surrender the original patent when filing a reissue application, and that he did not become aware of this amendment until November 19, 2009.[4] (Doc. #8, p.15). Mettke does not explain how the amendment of the surrender regulation bears on his ability to bring a claim against HP for fraud. But even assuming it somehow did, Mettke's argument misses the point that it is the discovery of the fraudulent conduct rather than the discovery that the law might provide a remedy for such conduct that triggers the running of the four-year statute of limitations under the discovery rule. See e.g., Lynch v. Dial Fin. Co. of Ohio, 101 App. 3d 742, 747 (Ohio 8th Dist. 1995); Conrad v. Fifth Third Bank, 1993 WL 235794, *3 (Ohio App. 6 Dist. June 30, 1993) ("Ignorance of the law does not toll the operation of the statute of limitations. It is ignorance of the facts that may provide relief.").

It is undisputed that Mettke became aware of the facts giving rise to his fraud claim more than four years prior to the filing of his complaint and of course, an exhibit attached to the complaint indicates that Mettke was so aware. Accordingly, the court finds that Mettke's fraud claim is barred by the statute of limitations. Because the court grants HP's motion to dismiss the fraud claim on this basis, it will not address HP's alternative argument that the complaint fails to plead a claim for fraud.

---

[4] Section 1.178 of Title 37 of the Code of Federal Regulations, as amended, provides in pertinent part: "(a)The application for reissue of a patent shall constitute an offer to surrender that patent, and the surrender shall take effect upon reissue of the patent. Until a reissue application is granted, the original

## IV. Conclusion

Based on the foregoing analysis, HP's motion to dismiss (Doc. #5) is granted in part and denied in part. HP is granted dismissal of Mettke's fraud claim, but is denied dismissal of Mettke's claim for breach of contract.

It is so ORDERED.

James L. Graham
UNITED STATES DISTRICT JUDGE

Date: April 6, 2012

---

patent shall remain in effect." 37 C.F.R. §1.178(a)